UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

                                                          Crim Case No. 23-20610
v.                                                   Hon. Laurie J. Michelson

CHRISTINE OLNEY,

        Defendant.
_____/

**<u>GOVERNMENT'S SENTENCING MEMORANDUM</u>**

Beginning in or around September 2012 and continuing through January 2020, Defendant Christine Olney stole over $64,000.00 in Supplemental Security Income (SSI) benefits intended for her disabled son.  Olney stole these monies while serving as representative payee for her son's benefits, a role that obligated her to provide the Social Security Administration (SSA) with an honest report of her son's living arrangements, household income and resources, and any changes thereto.  Instead, Olney defrauded the SSA by repeatedly lying about the true state of her son's household income and resources.  She did this in order to continue receiving those SSI benefits – benefits to which she admittedly knew neither she nor her son were entitled.

On December 19, 2023, Defendant Olney pleaded guilty to one count of misdemeanor Theft of Government Funds; she is now scheduled to appear for sentencing at 2:00 p.m. on April 24, 2024. For the reasons stated below, the government believes that a sentence at the midpoint of the guideline range is "sufficient, but not greater than necessary," pursuant to the purposes of 18 U.S.C. § 3553(a).

I. **Background**

The United States adopts the timeline of relevant case events, the description of the charge to which Defendant Olney has pleaded guilty, and the statement of the offense conduct detailed by the Probation Department in the revised Presentence Investigation Report (PSR) dated April 12, 2024. As discussed further below, one additional relevant and important part of the offense conduct in this case is the fact that Olney was selected by the SSA to be, and did therefore serve as, the representative payee for her son's benefits.

II. **Calculation of Advisory Sentencing Guidelines**

The Probation Department has calculated Defendant Olney's sentencing guideline range to be 6-12 months based on an offense level of 10 and a criminal history category of I. (PSR ¶ 52.) The Government filed an objection to the PSR in this regard. Specifically, the Government objected to the assessment of zero (0) points for the Adjustment for Role in the Offense at paragraph 19, and asserted

that the two-level Abuse of Position of Trust enhancement set forth in Section 3B1.3 of the U.S. Sentencing Commission Guidelines Manual applies to the offense conduct committed by the defendant. The Government maintains this position, for the reasons stated below.

Pursuant to the U.S. Sentencing Guidelines, the Abuse of Position of Trust enhancement is warranted "[i]f the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense." U.S.S.G. § 3B1.3. The application notes define a "position of public or private trust" as one that is characterized by discretion. U.S.S.G. § 3B1.3, Application Note 1.

First, Christine Olney was serving in a position of trust to the SSA as representative payee for the SSI benefits that her minor son was receiving. Under SSA regulations, a representative payee has a legal obligation to manage and account for a beneficiary's Social Security benefits, and is required to expend the benefits solely for the use and benefit of the beneficiary "in a manner and for the purposes [the representative payee] *determines* . . . to be in [the beneficiary's] best interests." 20 C.F.R. § 416.635(a) (emphasis added). In other words, Olney had the *discretion* to either save or spend her son's SSI benefits on his behalf as she saw fit. The only check on that discretion is a requirement to provide an accounting of how the funds were spent to the SSA, upon request. The SSA does

3

not question how the benefits are spent or otherwise involve itself in that process beyond this simple request for documentation. The representative payee position therefore involves significant discretion as to how the benefits are expended, and the SSA entrusted Olney with that discretion to act on its behalf. Accordingly, SSA representative payees, such as Olney, serve in positions of trust to the Social Security Administration.

Moreover, to become representative payee, Olney had to apply to the SSA. And as part of the application process, Olney had to agree to provide the SSA with an honest report of her son's living arrangements, household income and resources, and any changes thereto, in order to assist the SSA in redetermining her son's eligibility for benefits. This need to apply to the agency directly and the reporting responsibilities are further indicators that the SSA has a trust relationship with its representative payees.

Second, Olney used her position as representative payee to facilitate both the commission of the crime and its concealment. She did this by lying to the SSA, in violation of her reporting obligations. Specifically, Olney falsely reported her husband's monthly income to the SSA as $0.00 eighty-five (85) separate times because she knew that it would impact her son's eligibility to continue receiving SSI benefits. She essentially used her role as representative payee to impact the SSA's eligibility determination, in order to fraudulently maintain the continued

receipt of SSI benefits.  Had Olney been truthful with the SSA in accordance with her obligations as a representative payee, we would not be before the Court in the first place.

The Probation Department declined to apply the Abuse of Position of Trust enhancement in this case on the basis that Olney "did not hold professional or managerial discretion with the Social Security Administration, she was not an employee, and she did not misrepresent to anyone that she held a position of trust." (PSR A-2.)

The Government submits that one does not need to be an employee of the Social Security Administration to serve it in a position of trust as representative payee because the position explicitly and inherently involves a significant amount of managerial discretion over a claimant's benefits – discretion that is given to the payee by the SSA.  In fact, multiple courts have upheld the application of this enhancement in cases of Social Security representative payee fraud.  *See United States v. Shevi*, 345 F.3d 675, 680 (8th Cir. 2003) (affirming application of abuse of position of trust enhancement where representative payee stole Social Security benefits belonging to minor children); *United States v. Kennedy*, 554 F.3d 415, 425 (3d Cir. 2009) (affirming application of abuse of position of trust enhancement where representative payee stole benefits belonging to elderly beneficiaries); *United States v. Potwin,* No. 98-1271, 1998 WL 907001, at *2 (2d Cir. Dec. 23,

1998) (affirming application of abuse of position of trust enhancement where SSA representative payee stole Social Security benefits belonging to mentally disabled sister); *but see United States v. Etienne*, 772 F. App'x 795, 799 (11th Cir. 2019) ("A representative payee does not occupy a 'position of public of [sic] private trust' relative to the SSA based on the § 3B1.3 factors of professional judgment, discretion, and deference.").[1]

This case is particularly analogous to *United States v. Shevi*, 345 F.3d 675, 680 (8th Cir. 2003), in which the Eighth Circuit Court of Appeals affirmed the application of the Abuse of Position of Trust enhancement to the guideline calculation of an uncle who served as the trustee of (and then stole) Social Security benefits received by his minor niece and nephew. The court noted that the uncle had substantial discretion to invest or spend the funds, which therefore enabled him to embezzle the funds and made the detection of his offense far more difficult. *Id*. The court concluded that "a relative with this degree of control over finances *may* occupy a position of private trust." *Id*. Like the uncle in *Shevi*, and as previously discussed above, Christine Olney was entrusted by the SSA with significant

---

[1] It is the Government's position that the reasoning in *Etienne* is flawed because it appears to be based on incomplete information and an inaccurate understanding of how representative payees function relative to other positions to which the Eleventh Circuit analogized them, and it was therefore wrongfully decided. Rather than add potentially unnecessary pages to the body of this Sentencing Memorandum, should the Court be inclined to rely on *Etienne* in resolving this issue, the Government (1) would respectfully request the opportunity to submit supplemental briefing with a detailed analysis of the flaws in the Eleventh Circuit's reasoning; and (2) will be prepared to discuss those flaws on the record at the sentencing hearing.

6

discretion to manage her son's SSI benefits, and she used her position as representative payee to facilitate both the commission of the crime and its concealment. *See also Potwin,* 1998 WL 907001, at *2 (Court was amply justified in construing the defendant's position as representative payee as one of trust within the meaning of § 3B1.3 because the defendant acquired significant discretion over the use of her sister's SSA benefits.)

Finally, the Abuse of Position of Trust enhancement has been applied in similar cases by courts in this District. *See, e.g., United States v. Tubbs*, No. 19-20142 (abuse of trust enhancement upheld where the defendant was the representative payee for her mother's Social Security benefits); *United States v. Anderson*, No. 21-20106 (enhancement applied where the defendant was the representative payee for his minor daughter); *United States v. Little*, No. 20-20296 (defendant was representative payee for minor son's benefits); *United States v. Aldridge*, No. 19-20651 (representative payee for mother's benefits); *but see United States v. Gordon*, No. 22-20204 (representative payee for minor son's benefits).

For the above reasons, the Government submits that the defendant's conduct falls squarely within the parameters of the plain meaning of U.S.S.G § 3B1.3, such that the Abuse of Position of Trust enhancement should apply. The Government therefore maintains that the calculation of the advisory guideline range should

include a two-level enhancement for the defendant's abuse of her position of trust as representative payee for her son's benefits. The application of this two-level enhancement would increase the offense level from 10 to 12 and result in a guideline range of 10-16 months.

### III.     The Relevant § 3553 Factors

The task of a court, at sentencing, is to impose a sentence upon a defendant that is, "'sufficient, but not greater than necessary to comply with the purposes,' of section 3553(a)(2)." *United States v. Wilms*, 495 F.3d 277, 281 (6th Cir. 2007) (*quoting United States v. Foreman*, 436 F.3d 638, 644 n.1 (6th Cir. 2006)).

### (1)     Nature and Circumstances of the Offense and History and Characteristics of the Defendant

The Court must consider, in fashioning a sentence, the nature and circumstances of the offense and the history and characteristics of a defendant. 18 U.S.C. § 3553(a)(1).

Defendant Olney comes before the Court at the age of 48 with a turbulent childhood history, seemingly minor health problems, and three adult children, one of whom remains under Olney's care. The Government acknowledges that some of these items could be seen to weigh in favor of some leniency. However, as discussed below, other factors weigh opposite.

First and foremost is the nature and scope of this fraud. Olney knew that as representative payee of her son's benefits, she was required to honestly report the

8

composition of her son's household and household income and resources to the SSA. But month after month, year upon year, Olney lied to the SSA, in violation of her reporting obligations. Specifically, and as previously noted, Olney falsely reported her husband's monthly income to the SSA as $0.00 approximately 85 different times (once a month for more than seven years), even when he was averaging income upwards of $75,000 per year, because she knew that it would affect her son's eligibility for SSI benefits. This was not a momentary lapse in judgment but rather a series of deliberate and conscious choices to steal from the government for an extended period of time.

Furthermore, while it is true that the defendant will have to make restitution, it is important to remember that restitution is mandatory in the case of <u>all</u> financial offenses. Federal benefits fraud is a real crime that should be met with more than merely a financial consequence, even where the financial consequence may be significant.

### (2) Seriousness of the Offense, Respect for the Law, and Just Punishment

The second factor requires the Court to impose a sentence that reflects the seriousness of the offense, promotes respect for the law, and provides just punishment. 18 U.S.C. § 3553(a)(2)(A).

The Government believes that the defendant's crime – the conversion of tens of thousands of dollars in federal benefits, lying to the government on a monthly basis for over seven years to perpetuate the fraud, while occupying a position of

9

trust with respect to the Social Security Administration – is a serious one that should be met with a serious consequence.

      This purpose of sentencing is often minimized in the context of financial crimes. Nonetheless, offenses such as this negatively affect the public's perception of social welfare programs; specifically, these crimes erode confidence in the Social Security Administration and its ability to safeguard taxpayer contributions.

      Moreover, it is important to understand that this is not a "victimless" crime. Theft from the government is theft from the taxpayers that fund the government. Taking money from the Social Security Administration in particular is an affront against every hardworking individual who pays into the system in hopes that it will still be there to support them in their retirement or the event of a disability. As the Court is likely aware, the Social Security system is in jeopardy and conduct such as that of the defendant puts the system at even greater risk of insolvency. Now more than ever, program integrity is a topic of significant concern amongst lawmakers, highlighting the need for those who steal from the government to be held accountable.

      Simply having to pay the money back would not be a "just punishment," but rather a concession that this defendant – for all practical purposes – is entitled to demand a long-term, interest-free loan from her fellow citizens, which may never be repaid in full.

### (3) Need to Afford Adequate Deterrence & Protect the Public

The sentence imposed must also, "afford adequate deterrence to criminal conduct and […] protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(B)-(C).

The United States acknowledges that given the defendant's relatively minor and remote criminal history, any sentence imposed in this case might be sufficient to discourage *her* from engaging in additional criminal conduct.

However, the sentence imposed in this case should also serve to deter others who seek profit by stealing from the government. Thousands and thousands of people receive benefits from the SSA and its programs, making the agency an attractive target for fraud and malfeasance. Whatever sentence the Court imposes needs to be sufficient to dissuade the public from engaging in misconduct akin to that of the defendant and send a message to other would-be thieves that there are significant consequences for defrauding the SSA.

### (4) Effective Training and Treatment

Additionally, the sentence imposed must, "provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(D).

The defendant has not expressed a desire to further her education or employment skills. However, the Government would encourage the defendant to

11

use any custodial period to take advantage of any relevant educational opportunities or vocational training. As for the defendant's health, the Government believes that the Bureau of Prisons is fully capable of treating the defendant's health issues during any term of incarceration. Additionally, the Government acknowledges the Probation Department's assessment that a sentence that takes into consideration the defendant's son's medical care is necessary. (*See* PSR ¶ 73.)

### (5) Kinds of Sentences Available and Sentencing Range

The Court must also consider, "the kinds of sentences available …[and] the kinds of sentences and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the [United States Sentencing] guidelines." 18 U.S.C. §§ 3553(a)(3), 3553(a)(4)(A).

The defendant's offense is a Class C felony. The Probation Department's calculation of the sentencing guidelines places her in Zone B of the sentencing table. Under the applicable guideline provision, the "minimum term" of the defendant's advisory guideline range (here 6 months) may be satisfied as follows:

(1) a sentence of imprisonment;

(2) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or

  home detention according to the schedule in subsection (e),

  provided that at least one month is satisfied by imprisonment; or

 (3) a sentence of probation that includes a condition or combination of conditions that substitute intermittent confinement, community confinement, or home detention for imprisonment according to the schedule in subsection (e).

U.S.S.G. § 5C1.1(c).

  Calculation of the sentencing guidelines with the addition of the § 3B1.3 Abuse of Position of Trust enhancement would place the defendant in Zone C of the sentencing table. Under the guideline provision applicable to Zone C, the "minimum term" of the defendant's advisory guideline range (10 months) may be satisfied by:

 (1) a sentence of imprisonment; or

 (2) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention according to the schedule in subsection (e), provided that at least one-half of the minimum term is satisfied by imprisonment.

U.S.S.G. § 5C1.1(d).

### (6) The Need to Avoid Unwarranted Sentencing Disparities

According to the Judiciary Sentencing Information Network (JSIN), with regard to the guidelines as calculated by the Probation Department:

> During the last five fiscal years (FY2019-2023), there were 1267 defendants whose primary guideline was §2B1.1, with a Final Offense Level of 10 and a Criminal History Category of I, after excluding defendants who received a §5K1.1 substantial assistance departure. For the 402 defendants (32%) who received a sentence of imprisonment in whole or in part, the average length of imprisonment imposed was 6 month(s) and the median length of imprisonment imposed was 6 month(s).

And with the addition of the Abuse of Position of Trust enhancement:

> During the last five fiscal years (FY2019-2023), there were 817 defendants whose primary guideline was §2B1.1, with a Final Offense Level of 12 and a Criminal History Category of I, after excluding defendants who received a §5K1.1 substantial assistance departure. For the 389 defendants (48%) who received a sentence of imprisonment in whole or in part, the average length of imprisonment imposed was 7 month(s) and the median length of imprisonment imposed was 6 month(s).

(https://jsin.ussc.gov/analytics/saw.dll?Dashboard, last visited April 17, 2024).

### (7) Restitution, Fines, and Forfeiture

Finally, a court must consider whether there is a need to impose restitution to any victim or victims of the defendant's offenses. 18 U.S.C. § 3553(a)(7).

The defendant's crime caused a financial loss to the government; thus, the United States seeks imposition of a mandatory restitution order under the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A, in the amount of

$64,356.00 to the Social Security Administration. In addition to ordering restitution, the Government would ask the Court to adopt the special conditions suggested by the Probation Department in ¶¶ 78 and 79 of the PSR.

## IV.  Conclusion

Having considered the factors set forth in 18 U.S.C. § 3553(a), the Government respectfully recommends a sentence at the midpoint of the defendant's guideline range. Ultimately, the Government asks the Court to impose whatever reasonable sentence it determines to be sufficient but not greater than necessary to comply with the purposes stated in 18 U.S.C. § 3553.

The United States further asks that the Court require the defendant to pay the mandatory $25.00 special assessment to the Clerk of the Court, and order her to pay restitution in the full amount of $64,356.00 to the Social Security Administration.

                                       Respectfully Submitted,

                                       DAWN N. ISON
                                       United States Attorney

                                       *s/Corinne M. Lambert*
                                       CORINNE M. LAMBERT
                                       Special Assistant U.S. Attorney
                                       211 W. Fort Street, Suite 2001
                                       Detroit, Michigan 48226
                                       (313) 226-9129

Date: April 17, 2024                     Corinne.Lambert@usdoj.gov

## CERTIFICATE OF SERVICE

  I hereby certify that on April 17, 2024, I filed the foregoing electronically via the CM/ECF system, which will send notification of such filing to counsel of record:

Casey Swanson
613 Abbott Street, Suite 500
Detroit, Michigan 48226
(313) 463-6144
casey_swanson@fd.org

A copy was also provided to Probation Officer Julie M. Grewe via email.

              *s/Corinne M. Lambert*
              CORINNE M. LAMBERT