UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                    Cr. No. 23-20610

v.                                      Honorable Laurie J. Michelson

CHRSTINE OLNEY,

        Defendant.
_____/

**CHRISTINE OLNEY'S SENTENCING MEMORANDUM**

**I.    Introduction**

Ms. Olney should be sentenced to time served. A review of her life, character, and the circumstances surrounding this offense demonstrate that this conviction, her time on pretrial supervision, and the restitution consequences are sufficient to serve the factors set forth in 18 U.S.C. § 3553(a).

**II.    Analysis**

Section 3553(a) directs courts to impose a sentence that is "sufficient, *but not greater than necessary,* to comply with the purposes set forth in paragraph two." Those purposes include: (1) reflecting the seriousness of the offense; (2) promoting respect for the law and providing just punishment; (3) protecting the public; (4) deterrence;

1

and (5) providing the defendant with educational or vocational training, medical care or other correctional treatment in the most effective manner. Under § 3553(a), courts are further directed to consider other factors: (1) nature and circumstances of the offense and history and characteristics of the defendant; (2) need for the sentence imposed; (3) kinds of sentences available; (4) the sentencing guidelines range and any pertinent policy statement; (5) the need to avoid unwarranted sentence disparities among defendants with similar records and criminal conduct; and the need to provide restitution to victims. 18 U.S.C. §3553(a)(1)-(7). When a guideline "does not exemplify the Commission's exercise of its characteristic institutional role," because the Commission "did not take account of 'empirical data and national experience,'" the sentencing court is free to conclude that the guideline "yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes, even in a mine-run case." *Kimbrough v. United States*, 552 U.S. 85, 96, 109-10(2007).

Ms. Olney's sentencing guidelines range according to defense counsel and Probation is 6 to 12 months. The offense in this case is serious. It is a misdemeanor offense with a maximum term of 12 months' imprisonment. She readily accepted responsibility in this case and pled guilty to one count of misdemeanor theft of government funds.

2

### *Olney is a dedicated mother*

Christine Olney met her husband, Jason Olney, when they were kids. They became a couple in 1995, had a child, and then married when she was pregnant with their second child. They have three children together, a son, Dallas (27 years old), a son, Mason (24 years old), and a daughter, Rhyse (20 years old). Christine worked as a medical assistant up until she had her son Mason in 2000. Mason has Autism and requires continuous care, so Christine was not able to return to work and instead became a full-time homemaker and caretaker for her son.



Photo of Mason Olney

Mason struggles with a severe form of Autism that impacts every aspect of his life physically, socially and emotionally. Mason's impairments are nearly invisible, yet

they are debilitating. He was bullied endlessly in school and even at home, it was difficult at times for his own siblings to understand Autism and their brother's behavior. Christine has worked very hard over the years to learn how to parent and create the best living environment for Mason given his severe disability. She has learned how to cope and manage his extreme anxiety and worries, his compulsive hoarding, binge eating, and other impulsive behaviors, his sensory issues, and his physical and emotional acting out behavior. Mason is prescribed medications that Christine ensures he takes consistently. Mason does not have the ability to care for himself.

While in school, Mason always had a paraprofessional in his classroom alongside him. During his early education, Rachel Vivian was his paraprofessional. She now works in a different school district. She maintained a relationship with Ms. Olney and the two have been best friends since Rachael was Mason's parapro. She has submitted a letter that outlines important aspects of Ms. Olney's character and illustrates her importance to Mason's life. Ex. A, Letter from Rachel Vivian.

In her letter, Rachael describes the reality of life with Christine's son, Mason, and stated, "Simply put: Mason cannot manage himself as an adult in our society. Christine is his management system. From doctor's appointments & medications to managing his emotional outbursts & teaching him the ways of the world - she quite literally does it all for him." In speaking further about Christine's role in Mason's life,

Rachael explains in her letter, "He has never known a day in his life that is without her presence to lead, guide, provide and love." She concludes her letter by saying, "She's involved in our tiny community; a giver and provider to many in her world; doesn't have a record or history that would suggest she cannot learn from this; and most importantly Mason needs her at home."

Mason can pose a safety risk to himself and others around him, which means Christine is always with him unless he is sleeping or in therapy. Even then, Christine finds herself managing potentially harmful behavior. A good example of this is when Mason, while everyone is sleeping, eats five dozen cookies and inadvertently makes himself sick. Rachael says in her letter to the court, "I have watched as she has continued to pile more burden onto her plate through the years with very little outlet for herself. Not once in our 5 ½ years of friendship have we been able to go to lunch or a movie. We have never had an afternoon shopping spree, a concert or girls getaway weekend. Where Christine goes- Mason goes."

One of the many behavioral health organizations Christine found to help provide care to her son was LifeWays in Jackson, MI. Mason was receiving weekly therapy sessions with his therapist, Anne Costello, from September 2011 through September 2012 along with occupational therapy, speech therapy and psychiatric care to manage his medications, specifically, Risperdol.

Records from LifeWays show a small snapshot of the struggles Christine was having in and around the time of the offense conduct. The records also show a glimpse of the behavioral challenges Christine experienced and was learning how to manage with her son. A progress note from June 2012, stated, "The therapist addressed current stressors with Christine. Christine and Jason are stressed with car troubles, and the car troubles have gotten in the way of Mason's OT assessment in Battle Creek." (See Exhibit B, LifeWays progress note) A progress note from July 2012 stated, "Mason pulled two teeth that were in his mouth, and bit his arm. Mason reported he did these things because he was bored. This is a concern because Mason has a very high tolerance for pain, and could potentially really injure himself." (Exhibit B, LifeWays Medical records)

The Probation Department recognizes the importance of prioritizing Mason's care and Ms. Olney's critical role in his life, as evidenced by ¶73 in the Presentence Report that states "A sentence which takes into consideration the defendant's son's medical care in the most effective manner will be necessary."

### *The offense was driven by a desire to care for her disabled son*

Ms. Olney takes care of all aspects of the care related to her son, Mason. This included navigating the various treatments and medications he needed, along with the associated costs. She sought relief through disability income from the Social Security Administration. Initially, when Christine applied for social security disability for

6

Mason, the claim was denied. She appealed the decision and in 2012 it was approved. The only reason why Christine applied for the disability assistance to begin with was because she could not afford the care she needed for Mason. When the award was granted in March of 2012, it was $700, which did help to offset the expenses related to Mason's care. The $700 per month was going towards the cost of his many therapies and medication copays. However, after Jason got a raise at work in early 2012, the Social Security Administration adjusted the disability payment, because the disability award is based on income. Ms. Olney could no longer afford Mason's necessary care. In a desperate attempt to continue to make ends meet, Ms. Olney lied and said that she and her husband had been separated in order to maintain that benefit so that Mason could continue his many therapies.

### *Olney is determined to repay the loss*

Ms. Olney recognizes her wrongdoing and is determined to pay back the loss. In her own words she stated, "I need to and want to make this right. I was between a rock and a hard place and didn't know what to do." Ms. Olney has expressed deep remorse and shame for her behavior, which she hid from everyone in her life, including her husband and best friend.

Ms. Olney and her husband have already discussed ways in which they can refinance their home and use the equity to start making payments towards restitution.

### III. Conclusion

Ms. Olney exercised poor judgment during a time of desperation. Her priority has always been to provide sufficient care for her son Mason. It is that desire that drove her to commit this offense. She recognizes the wrongfulness of her conduct and is eager to repay the loss in this case. The restitution, this conviction, and the time she has spent successfully complying supervision already are sufficient but not greater than necessary to meet the standards set forth in 18 U.S.C. § 3553(a).

Respectfully submitted,

**FEDERAL COMMUNITY DEFENDER OFFICE**

s/ Casey Swanson
Counsel for Ms. Olney
613 Abbott Street, Ste. 500
Detroit, MI  48226
313-967-5542
Casey_Swanson@fd.org

Date: April 17, 2024